## Commonwealth *v.* Gumaer, Appellant.

*Criminal law—Robbery—Evidence—Statement made to officers.*

In the trial of an indictment for robbery, it was not error to admit in evidence statements made by the defendants to state police officers, where it appeared that the officers had warned the defendants that anything they said might be used against them. Nor, under like conditions, was it error to admit evidence that one of the officers in the presence of the prosecutor had asked one of the defendants to repeat the words "hold up your hands," and that the latter had repeated the words in a low tone entirely different from his natural speaking voice, as used in conversation a short time before.

Argued March 7, 1921. Appeal, No. 31, March T., 1921, by defendant, from judgment of O. & T. Susquehanna County, Nov. Sessions, 1920, No. 1, on verdict of guilty in the case of Commonwealth of Pennsylvania v.

312 COMMONWEALTH *v.* GUMAER, Appellant.

Statement of Facts—Opinion of the Court. [76 Pa. Superior Ct.

Leroy L. Gumaer. Before ORLADY, P. J., PORTER, HEN-
DERSON, TREXLER, KELLER and LINN, JJ. Affirmed

Indictment for robbery. Before SMITH, P. J.

The facts are stated in the opinion of the Superior
Court.

Verdict of guilty upon which judgment of sentence
was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and
the charge of the court.

*Will Leach,* of *Welles, Leach & Davis,* and with them
*J. M. Kelly* and *C. L. Vanscoten,* of *Vanscoten & Little,*
for appellant.

*John Ferguson,* District Attorney, for appellee.

OPINION BY ORLADY, P. J., April 18, 1921:

This defendant was indicted and convicted with his
brother for robbery; a joint appeal having been taken,
that of William M. Gumaer was discontinued, and the ap-
peal of Leroy L. Gumaer is pressed for argument.

One Harry Goldman, a peddler, while traveling
through Susquehanna County on a public highway, in
a wagon containing his wares, was stopped in the early
afternoon by two men, whose faces were masked by
handkerchiefs and each displaying a revolver, challenged
Goldman with the demand "Hold up your hands and
give us your money." After some controversy and
actual physical violence used they secured $600 in mon-
ey, $300 in checks, and some jewelry. When withdraw-
ing from this assault and robbery they removed the
handkerchiefs from their faces, so that Goldman had a
fair view of them. He made his way to the nearest house
and notified a party of farmers, then engaged in thresh-
ing, of his dilemma. The party pursued the robbers, but
abandoned the search after losing the trail in the woods

not far from the home of the two defendants. Early in
th█ foro ██mbers of the state constabulary
w█ █ery ⸱⸱ investigate the local
conditions, an█ a description of the ·⸱·
volvers and property taken, obtained a warrant from a
local justice of the peace, to make a search of the de-
fendant's home. In their personal bedroom was found
in a trunk two army revolvers, a large knife, a quantity
of new cuff buttons, tie clasps, collar buttons and other
items of jewelry, with certain clothing that the defend-
ants admitted they had worn the day before. The state
constabulary officers arrested the defendants, and in the
presence of Goldman and others, placed caps on their
heads, when they were identified by Goldman, as being
the same as worn by the men who had assaulted him—
though at first view he insisted that the caps were not on
the parties as they wore them on the day before, and
when changed he identified them definitely. During this
interview one of the state constables said, "let me hear
you say, hold up your hands" and this defendant said,
"hold up your hands" in a very low tone, entirely differ-
ent from his natural voice as he used it in talking with
the officer a short time before. The officers had consider-
able conversation with the two defendants from the time
they were taken into custody, until they were taken to a
village store some distance from their home. The officer
distinctly stated to the defendants, "You need not say
anything to me at all, because the more you talk the more
you drag yourself into a hole. You understand that,
do you?" and Leroy said, "yes." This conversation was
strenuously objected to when the state constable was on
the stand, in having the defendant repeat the expression,
hold up your hands, and requesting him to wear a cap
alleged to be worn by one of the robbers, and is made the
subject of several assignments of error, as being highly
improper under the circumstances.

It cannot be fairly urged that any advantage was tak-
en of these defendants by the state constables, who

throughout the proceedings acted with exceptional fairness and discretion in advisire under arrest, and that anyre- peated on their trial. Froappears they were very free in talking to the officers, were definitely identified by Goldman, as well as was the property secured in their trunk in their own bedroom at their home. Nothing, said by the defendants can be construed as a confession. Their statements were voluntarily made, and the simulation of their voices and contradictory statements, their change of clothing, and the finding of the stolen articles in their possession, made it clearly a question of identification of their persons and the credibility of their testimony before the jury. Much of the evidence adduced and of which complaint is made, was received without exception, and in the charge of the court the jury was admonished to give all this testimony such weight as it was rightly entitled to, the trial judge stating, "Any admission or confession by the defendant in criminal cases, by words or otherwise, to officers of the law having them in custody, are not competent to be received in evidence unless it appears that the defendants were previously advised of their effect against them, and that they might be so used. But if so advised, such exemption will not avail them. The burden is upon the Commonwealth to prove the guilt of the defendants, and their silence cannot be used as a part of the Commonwealth's evidence or commented upon. But here the defendants have both been called and sworn and given evidence, and thereby stand in the position of any other witness in the case, and you have a right to consider their failure to deny any statement of facts tending to establish their guilt as a basis for your inference that such undenied statements are true, in connection with all the other evidence in the case you may so infer. You must determine the credibility of all the witnesses so testifying and believe them, or not, under the rules relating to the credibility of all the witnesses in regard to which

you have been charged. It is for you to remember what the witnesses testified to. It is not the province of the attorneys, or our right to control you in this regard. The truth as to the facts is finally the result of the composite recollection of the twelve jurors. The burden is upon the Commonwealth to satisfy the jury of the guilt of the accused beyond a reasonable doubt," and a correct explanation was made of what a reasonable doubt was.

The trial was conducted with exceptional fairness, and this appeal has been earnestly urged by able counsel, but on full consideration of the record we do not find any reversible error.

The judgment is affirmed, the record remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.